MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT (Bar No. 108533)
Email:  rplatt@manatt.com
JOSEPH E. LASKA (Bar No. 221055)
Email:  jlaska@manatt.com
11355 West Olympic Boulevard
Los Angeles, California  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

*Attorneys for Defendant*
AMERICAN MULTI-CINEMA, INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL BATEMAN, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> AMERICAN MULTI-CINEMA, INC.; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. CV07-00171 JHN (AJWx) <br><br> Hon. Jacqueline H. Nguyen <br><br> FILED AS CLASS ACTION <br><br> **AMERICAN MULTI-CINEMA, INC.'S OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS** <br><br> Filed concurrently with: <br> 1. Declaration of Ken Moscaret; <br> 2. Declaration of Joseph E. Laska; and <br> 3. Request for Judicial Notice. <br><br> Hearing Date:   August 1, 2011 <br> Hearing Time:  10:00 a.m. <br> Courtroom:    750 (Roybal) <br><br> Action filed:    January 9, 2007 |

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

    A.    Introduction .......................................................................................... 1

    B.    Summary of Facts ................................................................................. 3

            1.    This putative class action under FACTA is one of hundreds filed around the country, and one of 43 filed by class counsel .............................................................................. 3

            2.    The parties reached a settlement before class certification, substantive discovery, dispositive motions and trial ................. 4

            3.    The settlement involves the distribution of Voucher Packets to the unidentifiable class members ............................. 6

ARGUMENT ........................................................................................................... 7

I.    THE COURT'S DISCRETION TO AWARD A REASONABLE FEE IS LIMITED BY CAFA .................................................................................... 7

II.    THE PARTIES' SETTLEMENT IS A "COUPON SETTLEMENT" UNDER CAFA ............................................................................................ 9

III.    UNDER CAFA, CLASS COUNSEL'S PERCENTAGE-BASED FEE REQUEST IS PREMATURE AND EXCESSIVE AS A MATTER OF LAW ................................................................................................. 11

    A.    As a matter of law, a fee award based on the percentage method is premature until the redemption rate is known ................................. 12

    B.    Class counsel's $6.5 million settlement valuation is grossly inflated ................................................................................................. 13

    C.    A lodestar crosscheck will substantially reduce the percentage sought by class counsel ........................................................................ 14

IV.    ALTERNATIVELY, THIS COURT HAS DISCRETION TO AWARD FEES BASED ON CLASS COUNSEL'S LODESTAR— WHICH IS UNREASONABLY HIGH AND SHOULD BE REDUCED ................................................................................................. 15

    A.    Class counsel's hours should be reduced for insufficient documentation ...................................................................................... 16

    B.    Class counsel's purported lodestar is unreasonably high under the remaining *Kerr* factors ............................................................. 16

    C.    A lodestar multiplier is neither permitted nor warranted in this case ...................................................................................................... 19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

i

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

(continued)

**Page**

    1.    Contingency multipliers are unavailable in fee-shifting cases such as FACTA ................................................................. 20

    2.    Alternatively, this is not one of the "rare and exceptional" cases in which a lodestar multiplier would be appropriate ...... 21

V.    ALTERNATIVELY, IF THE COURT DECLINES TO APPLY CAFA, THEN FEES MUST BE DETERMINED USING THE LODESTAR METHOD ................................................................... 24

VI.    CLASS COUNSEL IS NOT ENTITLED TO RECOVER COSTS OF $7,500 FOR "PUBLICIZING THE SETTLEMENT." ................................ 25

CONCLUSION ................................................................................... 25

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300286914.4

ii

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bateman v. AMC*,
623 F.3d 708 (9th Cir. 2010) ............................................................... 5

*Browning v. Yahoo! Inc.*,
2007 U.S. Dist. LEXIS 86266 (N.D. Cal. Nov. 16, 2007) ................................ 10

*Cabrales v. County of Los Angeles*,
864 F.2d 1454 (9th Cir. 1988), *reinstated,* 886 F.2d 235 (1989), *cert. denied,* 494 U.S. 1091 (1990) ................................................................... 17, 22

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) ............................................................... 7

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*,
19 F.3d 1291 (9th Cir. 1994) ............................................................... 20

*City of Burlington v. Dague*,
505 U.S. 557 (1992) ................................................................... 17, 20

*Cunningham v. County of Los Angeles*,
879 F.2d 481 (9th Cir. 1988) ..................................................... 16, 17, 23

*Dudzienski v. GMRI, Inc.*,
Case No. CV 07-3911 (N.D. Ill.) ........................................................ 18

*Figueroa v. Sharper Image Corp.*,
517 F. Supp. 2d 1292 (S.D. Fla. 2007) ................................................... 8

*Fleury v. Richemont North Am., Inc.*,
2008 U.S. Dist. LEXIS 112459 (N.D. Cal. Aug. 6, 2008) ..................... passim

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................... 15

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................. 15, 16

*In re Excess Value Ins. Coverage Litig.*,
2004 U.S. Dist. LEXIS 14822 (S.D.N.Y. July 30, 2004) ............................. 23

*In Re TJX Companies Retail Security Breach Litigation*,
584 F. Supp. 2d 395 (D. Mass. 2008) .................................................... 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

iii

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1
2

**TABLE OF AUTHORITIES**
(continued)

Page

3
4

*Kerr v. Screen Extras Guild, Inc.*,
   526 F.2d 67 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976) ................ passim

5

*Morales v. City of San Rafael*,
   96 F.3d 359 (9th Cir. 1996) .................................................................. 16, 17, 22

6
7

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
   478 U.S. 546 (1986) ........................................................................................ 21

8
9

*Perdue v. Kenny A.*,
   130 S. Ct. 1662 (2010) .............................................................................. 22, 23

10

*Powers v. Eichen*,
   229 F.3d 1249 (9th Cir. 2000) .......................................................................... 7

11
12

*Reed v. Continental Guest Serv. Corp.*,
   2011 U.S. Dist. LEXIS 36814 (S.D.N.Y. April 4, 2011) ................................. 12

13

*Soualian v. Int'l Coffee & Tea*,
   Case No. CV 07-0502 RGK .................................................................. 5, 18, 19

14
15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ....................................................................... 7, 24

16
17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
   463 F.3d 646 (7th Cir. 2006) ............................................................................ 8

18

*Tex. State Teachers Assoc. v. Garland Indep. Sch. Dist.*,
   489 U.S. 782 (1989) ........................................................................................ 15

19
20

*The Stop & Shop Supermarket Co. et al. v. SmithKline Beecham Corp.*,
   2005 U.S. Dist. LEXIS 9705 (E.D. Pa. May 20, 2005) .................................. 14

21

*Todd v. Retail Concepts Inc.*,
   2008 U.S. Dist. LEXIS 117126 (M.D. Tenn. Aug. 22, 2008) .......................... 11

22
23

*True v. Am. Honda Motor Co.*,
   2010 U.S. Dist. LEXIS 23545 (C.D. Cal. Feb. 26, 2010) .................................. 8

24

*Van Gerwen v. Guarantee Mut. Life Co.*,
   214 F.3d 1041 (9th Cir. 2000) ......................................................................... 21

25
26

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................... 14, 20, 21

27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

iv

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

**TABLE OF AUTHORITIES**
(continued)

Page

*Yeagley v. Wells Fargo & Co.*,
2008 U.S. Dist. LEXIS 5040 (N.D. Cal. Jan. 18, 2008),
*overruled on other grounds* ....................................................... 10, 11, 24

*Yeagley v. Wells Fargo & Co.*,
365 Fed. Appx. 836 (9th Cir. 2010) ............................................ 21, 24

*Young v. Polo Retail, LLC*,
2006 U.S. Dist. LEXIS 81077 (N.D. Cal. Oct. 25, 2006) ............. 13, 14

*Zucker v. Occidental Petroleum Corp.*,
192 F.3d 1323 (9th Cir. 1999) ..................................................... 21, 24

**STATUTES**

15 U.S.C. § 1681 et seq. ....................................................................... 3

15 U.S.C. § 1681c(g) ............................................................................ 3

15 U.S.C. § 1681n ........................................................................ passim

28 U.S.C. § 1711(2) .............................................................................. 8

28 U.S.C. §§ 1711 et seq. ..................................................................... 7

28 U.S.C. § 1712(a) ..................................................................... passim

28 U.S.C. §§ 1712(a)-(b) ...................................................................... 8

28 U.S.C. § 1712(b)(1) ....................................................................... 15

28 U.S.C. § 1712(b)(2) ....................................................................... 19

28 U.S.C. § 1712(e) .............................................................................. 8

P.L. 109-2, § 2, 119 Stat. 4 .................................................................. 8

P.L. 109-2, § 9, 119 Stat. 14 ................................................................ 8

**OTHER AUTHORITIES**

1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:38 (6th ed. 2009) ...... 3

Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action
Litigation*, 18 Geo. J. Legal Ethics 1395, 1396-97 (2005) ................................ 12

H.R. 4008 ...................................................................................... 5, 17

Schwarzer, et al., *California Practice Guide: Federal Civil Procedure Before
Trial* § 10:786.10 (2011) ............................................................... 9, 12

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

v

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Fed. R.Civ. P. 23...............................................................................................7, 8

Fed. R. Civ. P. 23(a) and (b).......................................................................5, 23

Fed. R. Civ. P. 23(e)(2)......................................................................................8

Fed. R. Civ. P. 23(h), 2003 Adv. Comm. Notes....................................7, 12

Ninth Circuit Rule 36-3(a)............................................................................25

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

vi

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

# PRELIMINARY STATEMENT

## A.     Introduction

The parties to this putative (but uncertified) "gotcha" class action have reached a class-wide settlement, preliminarily approved by this Court, involving the distribution of coupons redeemable for one free small popcorn at theatres operated by Defendant American Multi-Cinema, Inc. ("AMC").  As compensation for having procured the right to free popcorn for the admittedly uninjured and unidentifiable class members, class counsel now seeks an award of $1,380,000 in attorneys' fees. Class counsel's fee request is legally unfounded and excessive.  Under controlling law, it should be denied as premature or, alternatively, substantially reduced.

The fee request is legally unfounded because it is based on the wrong legal standard.  Class counsel has elected to seek 21.3% of the total retail value of the coupons—which, based on the $5.75 retail price of a free small popcorn and the 1,129,256 coupons to be distributed, he calculates to be $6,493,222.  Yet the Class Action Fairness Act of 2005 ("CAFA"), which governs this action, expressly prohibits such a calculation.  CAFA was enacted by Congress to correct abuses of class action settlements, and of coupon settlements in particular.  CAFA mandates that in a proposed coupon settlement such as this one, "the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons *shall be based on the value to class members of the coupons that are redeemed*."  28 U.S.C. § 1712(a) (emphasis added).

The requested fee award runs afoul of this statutory mandate in two ways. First, in determining the value of the coupons, the Court may consider only those coupons that are *actually redeemed*.  Under the settlement, however, distribution of the coupons will not begin until after final approval of the settlement and the resolution of any appeals.  Since the coupons do not expire, the redemption rate cannot be reasonably estimated until after the coupons have been distributed and the redemption rate has slowed.  As a matter of law under CAFA, a fee award based

1    on a percentage of the value of the settlement would be premature at this time.

2        Second, class counsel simply assumes that each coupon should be valued at

3    the $5.75 retail price of a small popcorn.  Yet the facts of the settlement suggest

4    that the true "value to class members of the coupons that are redeemed" will be

5    more modest.  As explained below, nearly all class members will be required to

6    purchase movie tickets to obtain and redeem the coupons.  Moreover, the cost to

7    AMC of a small popcorn is obviously a mere fraction of the $5.75 retail price—

8    which is what facilitated this nuisance settlement and permits the distribution of so

9    many coupons.  While these facts do not in any way diminish the fairness of the

10   settlement to the unharmed and unidentifiable putative class members, they

11   substantially reduce class counsel's sky-high estimate of the value of the coupons—

12   and, along with it, his entitlement to attorneys' fees.

13       The Court is thus faced with two options under the law:  (1) deny class

14   counsel's percentage-based fee request without prejudice and defer the issue until

15   some reasonable time after the coupons have been distributed and the estimated

16   redemption rate is known; or (2) award fees based on class counsel's "lodestar," the

17   value of his time reasonably spent on this action.  Other courts in this position have

18   opted to apply the lodestar method.  If this Court likewise elects to use the lodestar

19   method, then it should award fees substantially lower than the $1,380,000 request.

20       Class counsel estimates his own lodestar to be $297,920.  As set forth in the

21   declaration of AMC's expert, that calculation is both unreasonably high and

22   insufficiently documented.  Moreover, contrary to class counsel's argument, the

23   lodestar may not be "multiplied" under fee-shifting statutes such as FACTA.  In

24   any event, this pre-certification coupon settlement hardly represents one of the rare

25   and exceptional cases in which a lodestar multiplier would be appropriate.

26       AMC respectfully requests that the Court either deny class counsel's

27   percentage-based fee request without prejudice or, alternatively, award fees in an

28   amount less than the $297,920 lodestar claimed by class counsel.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300286914.4                                    2

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

**B.    Summary of Facts**

       **1.    This putative class action under FACTA is one of hundreds filed around the country, and one of 43 filed by class counsel.**

Congress enacted the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681 et seq., effective December 4, 2006.  FACTA prohibits merchants from printing the expiration dates or more than the last five digits of credit or debit card numbers on electronic receipts provided to customers at the point of sale or transaction.  *Id*.  "Willful" violations of FACTA give rise to statutory damages of $100 to $1,000 per violation, plus punitive damages and attorneys' fees.  15 U.S.C. § 1681n.  FACTA was an amendment to the Fair Credit Reporting Act ("FCRA"); and FACTA, like FCRA, primarily governs entities that either extend or report consumer credit.  Section 1681c(g), the provision governing receipts printed by merchants, was buried among these credit reporting provisions and escaped the notice of nearly everyone—except the plaintiff's bar.

Almost immediately after FACTA took effect on December 4, 2006, hundreds of putative class actions were filed baldly alleging "willful" violations by seemingly every major merchant in the country.  Although none of the lawsuits alleged any actual injury suffered by any of the alleged class members, all of the lawsuits sought millions if not billions of dollars in statutory damages, punitive damages and attorneys' fees.  *See, e.g.*, 1 Joseph M. McLaughlin, *McLaughlin on Class Actions* § 2:38 (6th ed. 2009) ("FACTA class actions threaten businesses of every size with devastating classwide liability for what may be harmless statutory violations.").  This lawsuit against AMC, filed on January 9, 2007 (Dkt. No. 1), is one of approximately 43 nearly-identical FACTA lawsuits filed by class counsel in this case, Spiro Moss LLP.  (*See* Declaration of Joseph E. Laska ("Laska Decl.") ¶ 4.)

In nearly all FACTA cases, merchants were faced with potentially ruinous statutory damages based on unfounded allegations of willfulness.  For example,

AMC, which was FACTA-compliant in nearly all of its theatres nationwide, had suffered a software malfunction on certain automated box office ("ABO") kiosks that AMC had acquired through its recent merger with Loews Theatres ("Loews"). While the newly-acquired Loews ABOs redacted the expiration date and the middle seven or eight digits of customers' credit and debit card numbers on electronic receipts, the malfunction resulted in the printing of the first four and last four digits of card numbers, resulting in a technical violation of FACTA. (Dkt. No. 36.) Class counsel seized the opportunity and filed suit. Upon service of the lawsuit, AMC immediately corrected the malfunction. (*Id.*)

Due to the volume of AMC's ticket sales, those former Loews ABOs—representing only 3% of AMC's point of sale machines nationwide—printed 282,314 noncompliant receipts in the six weeks between December 4, 2006 (when FACTA took effect) and January 22, 2007 (two weeks after service of the suit, when AMC corrected the violations). There is no evidence that AMC willfully violated FACTA, and it defies reason to believe that AMC would have willfully violated federal law with respect to 3% of its recently-acquired payment machines.

**2.      The parties reached a settlement before class certification, substantive discovery, dispositive motions and trial.**

The activity in this case has been relatively modest. AMC answered the complaint after a short extension, and subsequently filed an amended answer. (Dkt. Nos. 7, 17.) Class counsel filed a motion to strike AMC's affirmative defenses—a move that was transparently designed to increase attorneys' fees, and that was accordingly denied in near full. (Dkt. No. 26.) After one round of written discovery, in which Plaintiff produced minimal responsive documents, AMC took Plaintiff's deposition and class counsel took one day of depositions of AMC witnesses.

Class counsel subsequently filed a form motion for class certification modeled after the nearly-identical motions that his firm had previously filed in its

1   other nearly-identical FACTA cases.  (Dkt. No. 28.)  The Court (then Cooper, J.)
2   denied class certification on "superiority" grounds on October 31, 2007.  (Dkt.
3   No. 41.)  Because the same "superiority" issue was pending before the Ninth
4   Circuit in another of class counsel's FACTA cases, *Soualian v. Int'l Coffee & Tea*,
5   Case No. CV07-0502 RGK (JCx), the Court promptly stayed the action pending
6   resolution of the *Soualian* appeal.  (Dkt. No. 42.)

7        The *Soualian* case subsequently settled and the appeal was dismissed.  In the
8   interim, Congress passed the Credit and Debit Card Clarification Act of 2007
9   ("H.R. 4008"), effective June 3, 2008, effectively eliminating FACTA lawsuits
10  based on the printing of expiration dates.  Because this action involved the printing
11  of three additional card number digits (as opposed to expiration dates), it was not
12  affected by H.R. 4008.  As a result, after a ten-month stay, class counsel filed a
13  renewed motion for class certification, which was denied by this Court on
14  October 24, 2008.  (Dkt. No. 54.)

15       Class counsel petitioned the Ninth Circuit for permission to appeal the order
16  denying class certification—just as it had previously done in its nearly-identical
17  *Soualian* case.  The petition was granted on January 23, 2009.  (Dkt. No. 56.)  Once
18  again, this Court promptly stayed the action pending appeal.  (Dkt. No. 60.)

19       With the matter stayed in this Court, the appeal was mediated, briefed and
20  argued in the Ninth Circuit.  On September 27, 2010, the Ninth Circuit reversed the
21  order denying class certification on "superiority" grounds.  *See Bateman v. AMC*,
22  623 F.3d 708, 724 (9th Cir. 2010).  Rather than instruct the Court to certify a class,
23  however, the Ninth Circuit remanded the action to this Court with instructions to
24  consider the other Rule 23(a) and (b) factors—expressly including, in what could be
25  interpreted as guidance to this Court, "the manageability of a nationwide class."  *Id.*

26       AMC promptly petitioned the Ninth Circuit for panel rehearing or,
27  alternatively, rehearing en banc.  (App. Dkt. No. 46.)  While AMC's petition was
28  pending, the parties participated in a one-day mediation resulting in a settlement.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300286914.4                                    5

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1    (Dkt. No. 70.)  At the parties' request, the Ninth Circuit remanded the case to this

2    Court for the limited purpose of evaluating the parties' settlement.  (App. Dkt.

3    No. 51.)  Thus, if the Court were to disapprove of the proposed settlement, the

4    action would then revert to the Ninth Circuit for consideration of AMC's petition

5    for rehearing.  (*Id.*)

6              **3.     The settlement involves the distribution of Voucher Packets to the
                        unidentifiable class members.**

7

8              The settlement, as preliminarily approved by this Court (Dkt. No. 85),

9    involves the distribution of 282,314 "Voucher Packets."  (Dkt. No. 81.)  Each

10   Voucher Packet will contain four vouchers, each one redeemable for one free small

11   popcorn on a future visit to an AMC theatre.  (*Id.*)  The coupons have no cash

12   value, are freely transferrable, and never expire.  (*Id.*)

13             Class members were offered the opportunity to submit a claim to receive a

14   Voucher Packet directly by mail.  The deadline to submit claims expired on

15   May 20, 2011.  In response, the parties received 897 claims—representing

16   approximately 0.3% of the 282,314 class members.  (Laska Decl. ¶ 3.)  Under the

17   terms of the settlement, those 897 claimants will receive Voucher Packets by mail.

18   In an attempt to distribute the remaining 281,417 Voucher Packets to as many of

19   the unknown class members as possible, the remainder will be distributed in the

20   same manner that the noncompliant receipts were originally issued:  upon a

21   customer making a purchase of movie tickets at one of the former Loews ABOs.

22   (Dkt. No. 81, Exhibit 1 ¶ 14(c).)

23             Although the parties settled the putative class's claims, they were unable to

24   agree on a reasonable fee for class counsel.  The parties agreed to submit that

25   determination to the Court.  AMC reserved its right to oppose the fee application on

26   any and all grounds, and each party reserved its respective right to appeal.  (Dkt.

27   No. 81.)

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                          6

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

# ARGUMENT

## I.
## THE COURT'S DISCRETION TO AWARD A REASONABLE FEE IS LIMITED BY CAFA.

Under FACTA, class counsel is entitled to "reasonable attorney's fees as determined by the court." *See* 15 U.S.C. § 1681n.  Generally, district courts have "broad authority" to determine what constitutes a "reasonable" fee. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000).[1]

The Court's broad authority is limited by Federal Rule of Civil Procedure 23, which requires courts to scrutinize any class action fee award for fairness and propriety. *See* Fed. R. Civ. P. 23(h), 2003 Adv. Comm. Notes ("the district court must ensure that the amount and mode of payment of attorney fees are fair and proper whether the fees come from a common fund or are otherwise paid"). Significantly, that class counsel's fee will be paid by AMC (and not taken out of any class-wide "fund") does not diminish this Court's responsibility to ensure that the amount of the fee award is reasonable. *See Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003) ("That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief provided to the class in the agreement does not detract from the need carefully to scrutinize the fee award."); *In Re TJX Companies Retail Security Breach Litigation*, 584 F. Supp. 2d 395, 399 (D. Mass. 2008) ("Nor is the court's duty [to ensure that the fees awarded are fair and reasonable] lessened by the fact that the amount awarded in fees and costs will not diminish the class recovery" because, among other things, "any [fee] award has the potential for 'precedential value' in future cases").

The Court's authority to award fees is further limited by CAFA, 28 U.S.C.

---

[1] Although the amount of the fee award is reviewed for abuse of discretion, *Powers*, 229 F.3d at 1256, "the factual determinations underlying an award of attorneys' fees" are reviewed for "clear error," and "the legal premises a district court uses to determine an award" are reviewed "de novo." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 977 (9th Cir. 2008).

§ 1711 et seq., which governs this case.[2]  Congress enacted CAFA because it was concerned about "abuses of the class action device"—particularly settlements where "counsel are awarded large fees, while leaving class members with coupons or other awards of little or no value."  P.L. 109-2, § 2, 119 Stat. 4.  Significantly, Congress did not prohibit coupon settlements.  Instead, Congress imposed specific requirements on district courts evaluating coupon settlements.[3]

CAFA specifically addresses Congress's concern over questionable awards of "large fees" by instructing courts how to calculate those fees.  According to the U.S. Senate Judiciary Committee, CAFA "specifies the methods for calculating attorneys' fees in class settlements in which coupons constitute all or part of the relief afforded to claimants to ensure that such fee awards are consistent with the benefits afforded class members or the amount of real work that the class counsel have performed in connection with the litigation."  109 S. Rpt. 14 (2005).

Under CAFA, courts have discretion to calculate fees under either the "percentage method" or the "lodestar method."  *See* 28 U.S.C. §§ 1712(a)-(b); *True v. Am. Honda Motor Co.*, 2010 U.S. Dist. LEXIS 23545, *61 (C.D. Cal. Feb. 26, 2010) (Phillips, J.)  However, CAFA imposes a significant limitation on fees

[2] CAFA applies to civil actions commenced on or after February 18, 2005, *see* P.L. 109-2, § 9, 119 Stat. 14, and defines "class action" to include "any civil action filed in a district court of the United States under rule 23 of the Federal Rules of Civil Procedure."  28 U.S.C. § 1711(2).  This putative class action is governed by CAFA because it was commenced in this U.S. District Court on January 9, 2007.

[3] On its face, CAFA does not require a higher level of judicial scrutiny of class action settlements than already existed under the Federal Rules of Civil Procedure.  *Compare* 28 U.S.C. § 1712(e) ("the court may approve the proposed [coupon] settlement only after a hearing to determine whether, and making a written finding that, the settlement is fair, reasonable, and adequate for class members") *with* Fed. R. Civ. P. 23(e)(2) ("the court may approve [a class settlement] only after a hearing and on finding that it is fair, reasonable, and adequate").  Nonetheless, some courts have interpreted CAFA to require heightened scrutiny of coupon settlements. *See, e.g., Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006) (in CAFA, "Congress required heightened judicial scrutiny of coupon-based settlements"); *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1321 (S.D. Fla. 2007) ("interpret[ing] the statutory directive to imply the application of a greater level of scrutiny to the existing criteria than existed pre-CAFA").  AMC believes that the parties' settlement satisfies even a heightened standard.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                          8

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1  calculated under the percentage method by expressly tying any fee award to "the

2  value to class members of the coupons that are redeemed."  28 U.S.C. § 1712(a).

3          As explained in Section II below, notwithstanding the parties' arbitrary use

4  of the term "vouchers," the settlement constitutes a "coupon settlement" under

5  CAFA.  And, as explained in Section III below, CAFA expressly prohibits the fee

6  calculation urged by class counsel here.  The Court has discretion to base a fee

7  award on a percentage of the value of the settlement (as class counsel requests), but

8  any such award must be based on "the value to class members of the coupons that

9  are redeemed"—which renders class counsel's $1,380,000 fee request both

10  excessive and premature.

**II.**
**THE PARTIES' SETTLEMENT IS**
**A "COUPON SETTLEMENT" UNDER CAFA.**

13          CAFA does not define "coupon settlement."  Commentators have recognized

14  that "'coupon settlement' is understood to mean settlements in which class

15  members obtain a *voucher* or contract right entitling them to goods or services from

16  the defendant on advantageous terms (e.g., *at no charge* or at a specified discount)

17  during a designated period of time."  Schwarzer, et al., *California Practice Guide:*

18  *Federal Civil Procedure Before Trial* § 10:786.10 (2011) (emphasis added).  This

19  broad definition of "coupon settlement" comports with CAFA's legislative history,

20  which "suggests that even such a non-cash benefit [for an entire product] could be a

21  coupon." *Fleury v. Richemont North Am., Inc.*, 2008 U.S. Dist. LEXIS 112459,

22  *11 (N.D. Cal. Aug. 6, 2008), *citing* 109 S. Rpt. 14 (2005).[4]

23

---

[4] CAFA's legislative history cites the following settlements involving free products
24  as examples of coupon settlements: (1) "a recent class action where consumers
alleged that a company was selling cribs that were unsafe for use by infants, [and]
25  the class members received either a crib repair kit or a coupon for $55 which could
be used toward the future purchase of a [new] Product"; (2) "[a]nother recent suit
26  involv[ing] allegations that Poland Spring water does not really come from a spring
deep in the woods of Maine," and the class members received "discounts or free
27  water . . . over five years"; and (3) a class action where "[a] manufacturer offered
consumers who bought a dozen Pinnacle golf balls free golf gloves" but failed to do
28  so, and the class members received three free golf balls.  109 S. Rpt. 14 (2005).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                    9

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

On the other hand, some courts have taken a narrower view that the distinguishing feature of a coupon is that it "require[s] class members to spend money in order to realize the settlement benefit." *Browning v. Yahoo! Inc.*, 2007 U.S. Dist. LEXIS 86266, *16 (N.D. Cal. Nov. 16, 2007).

Courts grappling with the definition of "coupon settlement" have generally defined the term broadly and determined that, even if a settlement does not squarely involve a "coupon," CAFA's provisions are nonetheless instructive in light of congressional intent. *See, e.g.*, *Yeagley v. Wells Fargo & Co.*, 2008 U.S. Dist. LEXIS 5040, *23-25 (N.D. Cal. Jan. 18, 2008) (struggling to determine whether a free credit report constitutes a "coupon," and holding that "[e]ven if the free credit report does not fall under CAFA's 'coupon' provisions, CAFA is still instructive"), *overruled on other grounds* at 365 Fed. Appx. 886; *accord Fleury*, 2008 U.S. Dist. LEXIS 112459 at *11 ("courts have still found the above CAFA provision instructive when the benefit to the class is coupon-like").

Even under the narrowest definition of "coupon," the settlement in this case constitutes a "coupon settlement" under CAFA. Although each voucher to be distributed by AMC is redeemable for one free small popcorn with no requirement of an additional purchase, the class members will nonetheless be required to spend money to obtain the benefit of the vouchers.

In an attempt to distribute Voucher Packets to as many of the unknown class members as possible, the Voucher Packets will be distributed in the same manner that the noncompliant receipts were originally issued: after a customer has purchased movie tickets at one of the former Loews ABOs. (Dkt. No. 81, Exhibit 1 ¶ 14(c) ("The Voucher Packets will be automatically distributed to customers purchasing tickets at the ABOs at the Class Theatres.").) The 897 class members who submitted valid claims will receive Voucher Packets directly by mail. (*Id.* ¶ 14(b).) But those 897 claimants represent only 0.3% of the 282,314 class members. The remaining 281,417 (or 99.7%) of the class members will receive

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4

10

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1    Voucher Packets only after purchasing one or more movie tickets at one of the

2    former Loews ABOs.  Thus, virtually all of the class members must make a

3    purchase to obtain the vouchers.

4         Moreover, the settlement provides that the vouchers are redeemable "on a

5    future visit to an AMC theatre."  (Dkt. No. 81, Exhibit 1 ¶ 14(a).)  Class members

6    may return to any AMC theatre on any future date to redeem one or more vouchers.

7    As a practical matter, however, class members are unlikely to visit an AMC theatre

8    simply for free popcorn.  Virtually all will redeem the vouchers upon returning to

9    an AMC theatre to watch a movie.  Thus, most class members will be required to

10   purchase at least two movie tickets—one to obtain the vouchers, and a second on a

11   future visit—before being able to redeem any of the vouchers.

12        These facts weigh heavily in favor of finding that the settlement before the

13   Court is a "coupon settlement" under CAFA.  Even if the Court determines that the

14   vouchers are not strictly "coupons," the Court should nonetheless follow its

15   predecessors who, faced with close calls, have heeded Congress's intent and found

16   CAFA's coupon provisions to be "still instructive."  *Fleury*, 2008 U.S. Dist. LEXIS

17   112459 at *11; *Yeagley*, 2008 U.S. Dist. LEXIS 5040 at *23-25.[5]

18                                          **III.**
                  **UNDER CAFA, CLASS COUNSEL'S PERCENTAGE-BASED FEE**
19            **REQUEST IS PREMATURE AND EXCESSIVE AS A MATTER OF LAW.**

20        Because this settlement is a "coupon settlement" under CAFA, class

21   counsel's request for a percentage fee is subject to strict limitations:

22

23   _____
     [5] Finding that the settlement is a "coupon settlement" under CAFA does not in any
24   way prevent this Court from granting final approval.  Courts regularly approve
     coupon settlements, particularly in FACTA cases.  *See, e.g.*, *Todd v. Retail*
25   *Concepts Inc.*, 2008 U.S. Dist. LEXIS 117126, at * 8 (M.D. Tenn. Aug. 22, 2008);
     Declaration of Gregory N. Karasik ("Karasik Decl."), Exhibit 2 (listing coupon
26   settlements under FACTA).  *Accord* 109 S. Rpt. 14 (2005) ("The [U.S. Senate
     Judiciary] Committee wishes to make clear that it does not intend to forbid all non-
27   cash settlements.  Such settlements may be appropriate where they provide real
     benefits to consumer class members (e.g., where [as here] coupons entitle class
28   members to receive something of actual value free of charge) or where [as here] the
     claims being resolved appear to be of marginal merit.").

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                          11

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

(a) **Contingent fees in coupon settlements.** If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.

28 U.S.C. § 1712(a). The purpose of this statute is clear: to prevent precisely the type of excessive percentage fee award sought here by class counsel.

A.   **As a matter of law, a fee award based on the percentage method is premature until the redemption rate is known.**

Section 1712(a) of CAFA expressly prohibits class counsel's request for a percentage of the value of the vouchers that are *distributed*. This provision is rooted in the practical reality that not all coupons distributed will be redeemed. In fact, the historical participation rate in coupon settlements has been low—approximately 26%. *See Reed v. Continental Guest Serv. Corp.*, 2011 U.S. Dist. LEXIS 36814, *9 (S.D.N.Y. April 4, 2011) (in a coupon settlement under FACTA, "while research has estimated the rate of participation in coupon settlements as somewhere in the neighborhood of 26%," the level was likely to be even lower in that case), *citing* Christopher R. Leslie, *The Need to Study Coupon Settlements in Class Action Litigation*, 18 Geo. J. Legal Ethics 1395, 1396-97 (2005).

If the Court honors class counsel's election to seek fees based on a percentage of the value of vouchers, then Section 1712(a) requires the Court to defer any fee award until after the settlement has been finally approved, after the vouchers have been distributed, and after the redemption rate can be determined. *See Fleury*, 2008 U.S. Dist. LEXIS 112459 at *11-12 ("the Court is not inclined to use the percentage method without at least some knowledge (even if limited) about the number of consumer credits that have been redeemed . . ."); *accord* Schwarzer, et al. at § 10:888.2 ("any fee award must be *delayed* until expiration of whatever period of time is allowed for coupon redemption"); *see also* Fed. R. Civ. P. 23(h), 2003 Adv. Comm. Notes ("[i]n some cases, it may be appropriate to defer some

1  portion of the fee award until actual payouts to class members are known").

2      In this case, since the vouchers never expire and the redemption rate will

3  never be known with certainty, the Court must defer any percentage fee award until

4  some time in the future—likely four to five months—when the redemption rate

5  slows considerably and can be reasonably estimated.

6  **B.    Class counsel's $6.5 million settlement valuation is grossly inflated.**

7      The percentage fee requested by class counsel is not only premature but also

8  excessive.  Under the percentage method, once the redemption rate is known, the

9  Court must then determine the redeemed coupons' "value to the class members."

10 28 U.S.C. § 1712(a).  Class counsel presumes that the "value" of each voucher is

11 the retail value of a small popcorn, currently $5.75.  This is based on nothing but

12 his dubious assertion that the vouchers are "virtually the equivalent of cash."

13 (Plaintiff's Memorandum of Points and Authorities ("MPA") at 1:9.)  While AMC

14 agrees that the vouchers provide valuable benefits to class members, common sense

15 dictates that their value is lower than class counsel urges.

16     Virtually all (99.7%) of the class members must purchase at least one movie

17 ticket—at a current average price at $8.73 (Laska Decl. ¶ 2)—to obtain the

18 vouchers, which may then be used on a future visit to an AMC theatre.  Although

19 class members are certainly entitled to enter any AMC theatre on any future date

20 simply to obtain four free popcorns, the overwhelming majority of class members

21 will likely redeem the vouchers upon returning to an AMC theatre to watch a

22 movie—and upon purchasing additional movie tickets.  Some class members will

23 redeem several vouchers at once.  Others will redeem one voucher on each future

24 visit—and such customers will therefore purchase at least five movie tickets (at an

25 average total cost of $43.65) before exhausting the vouchers.

26     Courts have observed that the value of a coupon—even a voucher

27 redeemable for an entire item—is less than the retail value of the item.  For

28 example, in *Young v. Polo Retail, LLC*, 2006 U.S. Dist. LEXIS 81077 (N.D. Cal.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                        13

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1    Oct. 25, 2006) (Walker, J.), the court granted preliminary approval of a class

2    settlement providing, among other things, gift cards that could be used at

3    defendants' stores.  Nonetheless, construing a gift card to be a "voucher," the court

4    observed that "the real economic value of such a voucher falls short of their printed

5    value."  *Id*. at *14.  Based on an analysis of the secondary market for gift cards, the

6    court concluded that "80 percent of the printed value[] best approximates the real

7    economic value of gift cards."  *Id*. at *15.  Here, while the vouchers are freely

8    transferrable and class members would be free to sell them, the resale value of a

9    coupon for a free $5.75 popcorn is obviously less than $5.75.

10       Thus, even if every voucher were to be redeemed (a practical impossibility),

11    the "value to the class" would be lower than class counsel's $6.5 million estimate.

12 **C.**    **A lodestar crosscheck will substantially reduce the percentage sought by**
13           **class counsel.**

14       CAFA does not specify the percentage that is appropriate for a fee award.

15    Class counsel is correct that the "benchmark" percentage for common fund cases in

16    the Ninth Circuit is 25%, which may be adjusted as required by the circumstances

17    of the case.  Yet class counsel understates the importance of a lodestar crosscheck.

18    *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation

19    of the lodestar, which measures the lawyers' investment of time in the litigation,

20    provides a check on the reasonableness of the percentage award."); *The Stop &*

21    *Shop Supermarket Co. et al. v. SmithKline Beecham Corp.*, 2005 U.S. Dist. LEXIS

22    9705, *52-53 (E.D. Pa. May 20, 2005) (the "purpose of the lodestar cross-check" is

23    "the avoidance of 'windfall fees'").

24       Presumably class counsel has discouraged this Court from performing a

25    lodestar crosscheck because his claimed lodestar is $297,920—nearly five times

26    smaller than the $1,380,000 fee sought.  And, set forth below in Section IV, the

27    claimed lodestar is excessive.  Thus, to the extent that the Court opts to award fees

28    based on the percentage method once the redemption rate and the "value to the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4             14

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1  class" has been determined, the Court should reduce the applicable percentage rate

2  to ensure a fee award commensurate with class counsel's lodestar.[6]

3  **IV.**

**ALTERNATIVELY, THIS COURT HAS DISCRETION TO AWARD FEES**
4  **BASED ON CLASS COUNSEL'S LODESTAR—WHICH IS**
**UNREASONABLY HIGH AND SHOULD BE REDUCED.**
5

6          Despite class counsel's election to seek fees under the percentage method,

7  the Court has discretion to award fees based on class counsel's lodestar.  28 U.S.C.

8  § 1712(b)(1) (if "a portion of the recovery of the coupons is not used to determine

9  the attorney's fee to be paid to class counsel, any attorney's fee award shall be

10  based upon the amount of time class counsel reasonably expended working on the

11  action"); *see also Fleury*, 2008 U.S. Dist. LEXIS 112459 at *12 ("Until the Court

12  has a sense of how many credits are actually redeemed, it cannot say that the

13  settlement does in fact have a value of close to $10 million.  Accordingly, the Court

14  favors using the lodestar method in lieu of the percentage method.").

15          A lodestar is calculated by multiplying the number of hours reasonably

16  expended on the litigation by a reasonable hourly rate.  *See Hensley v. Eckerhart*,

17  461 U.S. 424, 433 (1983), *abrogated on other grounds by Tex. State Teachers*

18  *Assoc. v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989).  The resulting number

19  must then be evaluated for reasonableness in light of the circumstances of the case.

20  *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *cert. denied*,

21  425 U.S. 951 (1976).

22          Class counsel testifies that his lodestar is $297,920, based on his hourly rate

23  of $700 multiplied by 425.6 hours allegedly spent on the case.  (Karasik Decl.

24  ¶¶ 11-14.)  As set forth below, that figure is excessive.  First, as explained in the

25  [6] Contrary to class counsel's briefing, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011
26  (9th Cir. 1998), does not set forth the factors that warrant an adjustment of the
percentage rate.  Rather, the factors identified by *Hanlon* (and exclusively relied
27  upon by class counsel to justify a rate of 21.3%) were discussed in connection with
the calculation of a lodestar.  *Id.* at 1029.  Significantly, as discussed below in
Section IV.B., those factors are subsumed within the lodestar calculation and may
28  *not* be used to increase or decrease a fee award.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                      15

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

declaration of AMC's expert, Ken Moscaret, the hours spent must be reduced due to insufficient time records.  Second, the remaining hours spent, multiplied by class counsel's high $700 hourly rate, more than sufficiently compensates him for the work performed and the results achieved, and therefore permits no upward adjustment.  To the contrary, under *Kerr* and its progeny, class counsel's lodestar should be further reduced under the circumstances of this case—including that the lodestar is several times larger than the fees awarded in other FACTA cases.  Third, no lodestar multiplier is available as a matter of law.

**A.    Class counsel's hours should be reduced for insufficient documentation.**

Class counsel is not entitled to compensation for every hour spent on a case. Courts should exclude from the lodestar amount hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Likewise, the "inadequate documentation" of hours worked may be considered as part of the lodestar calculation.  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988); *citing Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly.").

As explained by AMC's expert, 29.6 (or 7%) of the 425.6 hours claimed by class counsel were insufficiently documented with impermissibly vague entries for "legal research."  (Moscaret Decl. ¶¶ 61-67.)  Under *Hensley* and *Cunningham*, those hours (totaling $20,720) should be deducted from the lodestar.

**B.    Class counsel's purported lodestar is unreasonably high under the remaining *Kerr* factors.**

Although the remaining $277,200 lodestar is presumptively reasonable, courts may adjust it upward or downward to ensure reasonableness.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  In *Kerr*, decided in 1975, the Ninth Circuit instructed courts to consider the following twelve factors when evaluating reasonableness:

(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

526 F.2d at 70.  Since *Kerr*, however, the Ninth Circuit has clarified that the lodestar may only be adjusted "on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation."  *Morales*, 96 F.3d at 363-64.

Among the factors that are subsumed within the lodestar and that "cannot serve as independent bases for adjusting fee awards are:  (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation . . . (4) the results obtained," *Cabrales v. County of Los Angeles*, 864 F.2d 1454, 1464 (9th Cir. 1988), *reinstated,* 886 F.2d 235 (1989), *cert. denied,* 494 U.S. 1091 (1990), and (5) the contingent nature of the fee agreement.  *City of Burlington v. Dague,* 505 U.S. 557 (1992).  Those five factors may not be used to adjust the lodestar because they are already taken into account in either the reasonable hours component or the reasonable rate component. *Morales*, 96 F.3d at 364.  Any adjustment of the lodestar based on those subsumed factors is an abuse of discretion.  *Cunningham*, 879 F.2d at 487.

The remaining *Kerr* factors—those that may lead to an adjustment—weigh heavily in favor of *reducing* class counsel's lodestar.  (Moscaret Decl. ¶¶ 68-78.)

Certainly this FACTA case was not "undesirable" from the perspective of the plaintiff's bar.  Hundreds of copycat FACTA cases were filed around the country—so many that they received the condemnation of the U.S. Congress.  *See* H.R. 4008. Nor did this case prevent class counsel from accepting other employment.  This is one of 43 FACTA cases filed by his firm in the span of only two months.  (Laska Decl. ¶ 4.)  And the action was stayed for long periods of time, which permitted

1    class counsel to devote his full attention to other matters (and to earn other fees)

2    while this case was pending.  Nor did this case—which, after four and a half years

3    remains at the pre-certification stage—impose any exigent time circumstances.

4         Yet the *Kerr* factors that most strongly discredit class counsel's claimed

5    lodestar are "the customary fee" and the "awards in similar cases."  Class counsel

6    has submitted a list of other FACTA settlements involving coupons.  (Karasik

7    Decl., Exhibit 2.)  Significantly, the average fee award in those cases was

8    $100,095.56.  (Laska Decl. ¶ 5.)  The highest of those fee awards, in *Dudzienski v.*

9    *GMRI, Inc.*, Case No. CV 07-3911 (N.D. Ill.), was $130,000.  (*Id.*)  Class counsel

10   seeks more than ten times that amount here.

11        Arguably the best comparison of the reasonable value of class counsel's

12   services is the settlement reached in *Soualian*, another one of the 43 FACTA cases

13   handled by his firm.  Case No. CV 07-00502 RGK (JCx) (Klausner, J.).  The

14   complaint in *Soualian* was nearly identical to the complaint filed in this action.  In

15   both cases, class counsel filed a motion for class certification that was denied by the

16   court on "superiority" grounds.  (Request for Judicial Notice ("RJN"), Exhibit 1.)

17   In both cases, class counsel successfully petitioned the Ninth Circuit for review,

18   and the appeal was briefed.  (RJN, Exhibit 4.)  The parties in both cases reached a

19   coupon settlement and sought preliminary approval from the court.  (*Id.*)

20        Certain activity occurred in this action that did not occur in *Soualian*, such as

21   plaintiff's fee-generating motion to strike AMC's affirmative defenses, an

22   unsuccessful mediation, and an oral argument before the Ninth Circuit.  But even

23   greater activity occurred in *Soualian* that did not occur in this case.  In *Soualian*, the

24   defendant filed a motion to dismiss *and* a motion for summary judgment, both of

25   which class counsel was required to oppose.  (*Id.*)  Also, because the *Soualian* court

26   did not stay the action pending the Ninth Circuit appeal, and because *Soualian* was

27   not settled until the eve of trial on plaintiff's individual claim, the parties conducted

28   significant trial preparation, including briefing eight motions in limine.  (*Id.*)

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

300286914.4                                    18

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

1    Indeed, a comparison of the dockets for *Soualian* and this action suggests that the

2    litigation activity in *Soualian* was substantially more robust.  (*Id*.)

3    When the time came to seek fees as part of the class settlement, class counsel

4    in *Soualian* submitted a declaration claiming a lodestar of $235,200.  (RJN, Exhibit

5    2 ¶ 18.)  The court awarded class counsel fees of $95,480.94.  (RJN, Exhibit 3.)

6    Thus, not only is class counsel's $1,380,000 request approximately 14 times

7    larger than the average fee award in FACTA cases, but his claimed lodestar of

8    $297,920 is also 20% larger than his firm's lodestar in the more "heavily-litigated"

9    *Soualian* case.  (RJN, Exhibit 2 at 10:7 and Exhibit 4.)  This, along with the other

10   *Kerr* factors, weighs heavily in favor of further reducing class counsel's lodestar.

11   AMC's expert opines that a reasonable lodestar fee under these

12   circumstances would fall between $150,000 and $200,000.  (Moscaret Decl. ¶ 78.)

13   **C.    A lodestar multiplier is neither permitted nor warranted in this case.**

14   Class counsel attempts to bridge the chasm between his $297,920 lodestar

15   and $1,380,000 fee request by applying a lodestar "multiplier" of 4.6.  On its face,

16   CAFA does not categorically prohibit courts from applying a multiplier to a

17   lodestar.  28 U.S.C. § 1712(b)(2) ("Nothing in this subsection shall be construed to

18   prohibit application of a lodestar with a multiplier method of determining attorney's

19   fees.").  However, "[b]y the same token, nothing in [CAFA] expands the

20   authorization for the use of a multiplier; a multiplier may be used only to the extent

21   authorized by existing law."  109 S. Rpt. 14 (2005).

22   The multiplier requested by class counsel is unavailable here as a matter of

23   existing law.  As discussed below, to the extent that the multiplier is intended to

24   justify class counsel's percentage fee request, it is unavailable where, as here, fees

25   are sought under a fee-shifting statute (here, FACTA) and will not be deducted

26   from a common fund.  Alternatively, to the extent that the multiplier is intended to

27   reward class counsel's allegedly superior performance, this is not one of the "rare

28   and exceptional" cases in which a multiplier would be permissible or appropriate.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                      19

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

### 1.   Contingency multipliers are unavailable in fee-shifting cases such as FACTA.

Class counsel's entitlement to fees is rooted in FACTA, a fee-shifting statute. 15 U.S.C. § 1681n.  The U.S. Supreme Court has "proscribed contingency enhancements in statutory fee-shifting cases."  *Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1299 (9th Cir. 1994), *citing City of Burlington v. Dague*, 505 U.S. 557, 562-67 (1992) ("we hold that enhancement for contingency is not permitted under the fee-shifting statutes").  *Cf. Vizcaino*, 290 F.3d at 1051 ("The bar against risk multipliers in statutory fee cases does not apply to common fund cases.").

There are several rationales behind this rule.  Among them is that "the private market practice of rewarding attorneys for taking cases on a contingency basis would unduly burden losing parties who are required by statute to pay no more than a 'reasonable' fee for the services rendered by the winning party's attorneys in that particular case."  *Chemical Bank*, 19 F.3d at 1300, *citing Dague*, 505 U.S. at 562.  Moreover, whereas lodestar multipliers may be justifiable in certain "common fund" settlements because "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it," there is no similar justification where, as here, class counsel's fees are paid by the defendant.  *Chemical Bank*, 19 F.3d at 1300.

The multiplier of 4.6 requested by class counsel functions as a contingency multiplier.  The number "4.6" was arrived at by working backward from class counsel's desired percentage of what he perceives to be the value of the class recovery—a contingency fee.  *See* 28 U.S.C. § 1712(a) (titled "Contingent fees in coupon settlements").  Class counsel also argues that one of the justifications for a seven-figure fee award is the "risk of nonpayment."  (MPA at 8:24-10:21.)

Moreover, in support of his requested multiplier, class counsel cites a litany of cases applying multipliers higher than 4.6.  (MPA at 11:8-21.)  In every one of

those cases, the multiplier was applied during a lodestar crosscheck to justify plaintiff's award of a percentage fee to be deducted from a "common fund" of cash. Such contingency multipliers are permitted in common fund settlements. *Vizcaino*, 290 F.3d at 1051. But this is not a common fund settlement. Despite class counsel's repeated references to the value of the coupons as a "fund," the settlement in this case does not include a "common fund" because it provides no monetary relief to class members. *See Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1326 (9th Cir. 1999) ("Because the class members got no cash, there was no common fund"); *Yeagley v. Wells Fargo & Co.*, 365 Fed. Appx. 836, 887 (9th Cir. 2010) (finding no common fund because "the settlement did not award any monetary relief to the class").

Because FACTA is a fee-shifting statute and this settlement does not involve a common fund, the Court may not apply a risk multiplier as a matter of law.

**2.    Alternatively, this is not one of the "rare and exceptional" cases in which a lodestar multiplier would be appropriate.**

While the 4.6 multiplier requested by class counsel was admittedly calculated to reach his desired contingency fee, he also attempts to justify the use of a multiplier by pointing to his allegedly "superior results." (MPA at 11:9.) Even if a lodestar multiplier were available here, the Court should not apply one.

In the Ninth Circuit, courts may adjust the lodestar upward "only in 'rare and exceptional cases,'" and only based on factors not subsumed in the lodestar. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000); *accord Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986) ("upward adjustments of the lodestar . . . are proper only in certain 'rare' and 'exceptional' cases"). The pre-certification coupon settlement in this FACTA case is neither rare nor exceptional, and certainly does not justify multiplying the reasonable value of class counsel's services more than five fold.

1   The U.S. Supreme Court recently identified three "rare and exceptional"
2   circumstances in which a court may enhance a lodestar:  (1) "the hourly rate
3   employed in the lodestar calculation does not adequately measure the attorney's
4   true market value," (2) "the attorney's performance includes an extraordinary
5   outlay of expenses and the litigation is exceptionally protracted," and
6   (3) "exceptional delay in the payment of fees."  *Perdue v. Kenny A.*, 130 S. Ct.
7   1662, 1674 (2010) (reversing the district court's modest 75% lodestar enhancement,
8   despite the district court's finding that plaintiff's counsel had displayed "a higher
9   degree of skill, commitment, dedication, and professionalism . . . than the Court has
10   seen displayed by the attorneys in any other case during its 27 years on the
11   bench.").  The Supreme Court also stressed that any such enhancement would
12   require "specific evidence that the lodestar fee would not have been 'adequate to
13   attract competent counsel.'"  *Id*. (citations omitted).

14   None of these exceptional circumstances is present in this case.  Nor is there
15   any evidence that the lodestar fee is inadequate to attract competent counsel, given
16   the hundreds of FACTA lawsuits filed and the fees awarded in those settlements.

17   Moreover, as discussed above, a lodestar may be adjusted upward based only
18   on additional factors that are not already subsumed within the lodestar.  *Morales*,
19   96 F.3d at 363-64.  Factors subsumed within the lodestar include the novelty and
20   complexity of the issues, the special skill and experience of counsel, the quality of
21   representation, and the results obtained.  *Id*.; *Cabrales*, 864 F.2d at 1464.

22   In arguing that a multiplier should be applied here, class counsel hangs his
23   hat on two facts:  that the appellate proceedings resulted in a published opinion in
24   his favor, and that he subsequently obtained a settlement involving more coupons
25   than other FACTA cases.  But the results obtained by class counsel are already
26   subsumed within the lodestar and cannot justify a multiplier as a matter of law.  *Id*.
27   Any adjustment of the lodestar based on the results obtained would be an abuse of
28   discretion.  *Cunningham*, 879 F.2d at 487.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

300286914.4                                        22

OPPOSITION TO PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES AND COSTS

In any event, the "superior results" identified by class counsel have been overstated.  This is an unmeritorious, fee-driven lawsuit on behalf of an unharmed and unidentifiable putative class, and against a defendant that did not benefit in any way from the alleged technical violations.  As evidence, the parties agreed to what is essentially a nuisance settlement.  If the settlement provides a greater number of vouchers than other cases, that is only because this case involved a greater number of class members.  As class counsel concedes, he previously negotiated at least one FACTA settlement that provided a more generous packet of benefits.  (Karasik Decl. ¶ 8.)  Class counsel's own valuation of the Voucher Packets—the retail price of $23—is 23% of the *minimum* $100 statutory damages recoverable by each class member if the alleged "willful" violation had been proven.  15 U.S.C. § 1681n.

Moreover, the Ninth Circuit's opinion—and its limited holding that the Court could not deny class certification on certain "superiority" grounds—must be evaluated in light of its effect on the litigation.  The Ninth Circuit did not instruct this Court to certify a class.  To the contrary, the appellate court specifically instructed this Court to consider on remand all other Rule 23(a) and (b) factors, expressly including the manageability of a nationwide class.  After more than four and a half years of litigation, class counsel has obtained neither class certification nor any favorable adjudication of the merits.  And if the settlement were to be disapproved by this Court for any reason, the matter would revert to the Ninth Circuit for consideration of AMC's pending petition for rehearing.

Class counsel has not met his burden to demonstrate grounds for a multiplier, and accordingly the Court may not apply one.  *Perdue*, 130 S. Ct. at 1673.[7]

---

[7] Alternatively, if the Court were to conclude that a multiplier would be permissible under these circumstances, the Court should defer the question of whether to apply a multiplier until after the redemption rate of the vouchers is known.  *See, e.g.*, *In re Excess Value Ins. Coverage Litig.*, 2004 U.S. Dist. LEXIS 14822, *56 (S.D.N.Y. July 30, 2004) ("[T]he appropriate lodestar 'multiplier' (if any) cannot reasonably be determined without first determining the Settlement's actual benefit to the Class."); *Fleury*, 2008 U.S. Dist. LEXIS 112459 at *12-14 (applying the lodestar method at the time of settlement, but delaying the decision on whether to apply a multiplier until after redemption).

## V.
## ALTERNATIVELY, IF THE COURT DECLINES TO APPLY CAFA, THEN FEES MUST BE DETERMINED USING THE LODESTAR METHOD.

If the Court were to find that the settlement is not a "coupon settlement" and that CAFA does not apply, then the Court would be required to calculate class counsel's fee using the lodestar method. The general rule in the Ninth Circuit is that where the class counsel's claim for fees is based on a fee-shifting statute such as FACTA, courts "must" use the lodestar method to determine the fee. *Staton*, 327 F.3d at 965 ("Under a fee-shifting statute, the court *must* calculate awards for attorneys' fees using the 'lodestar' method.") (emphasis added) (internal quotations omitted); *accord* Schwarzer, et al., at § 19:870; 15 U.S.C. § 1681n.

In *Staton*, the Ninth Circuit created an exception to the general rule requiring the lodestar method under fee-shifting statutes where the settlement includes a common fund. *See Staton*, 327 F.3d at 967 ("We conclude, as have the two other circuits that have addressed the issue, that there is no preclusion on recovery of common fund [i.e., percentage] fees where a fee-shifting statute applies"). Again, the settlement in this case does not include a "common fund" because it provides no monetary relief to class members. *See Zucker*, 192 F.3d at 1326 ("Because the class members got no cash, there was no common fund"). Thus, the *Staton* exception does not apply, and fees must be based on class counsel's lodestar.

The Ninth Circuit's recent unpublished opinion in *Yeagley* is instructive. 365 Fed. Appx. 886. In evaluating a coupon-like settlement under the FCRA (FACTA's parent statute), the district court had considered CAFA and determined that the settlement did not strictly involve a coupon settlement, but nonetheless awarded fees under the percentage method. *See Yeagley*, 2008 U.S. Dist. LEXIS 5040 at *19. The Ninth Circuit reversed, reaffirming the rule that the lodestar method must be used to determine fees under the FCRA's fee-shifting statute where, as here, the settlement does not include a "common fund." *Yeagley*, 365 Fed. Appx. at 887 ("under a fee-shifting statute such as the FCRA, the lodestar

method is generally the correct method for calculating attorneys' fees"; and holding that the percentage method could not be applied because "the settlement did not award any monetary relief to the class"); Ninth Circuit Rule 36-3(a).

**VI.**

**CLASS COUNSEL IS NOT ENTITLED TO RECOVER COSTS OF $7,500 FOR "PUBLICIZING THE SETTLEMENT."**

AMC does not oppose class counsel's request for costs—with one important exception. Class counsel claims $7,500 in costs for "[a]dvertising for publicizing the Settlement on the Top Class Actions website." (Karasik Decl. ¶ 15.) Class counsel unilaterally "decided to supplement the notice program ordered by the Court with additional advertising to generate a higher claims rate." (*Id.*)

AMC never agreed to such costs. The parties agreed on the notice that would be provided to the class. That notice was deemed to be sufficient by this Court when it preliminarily approved the settlement. Class counsel was free to publicize the settlement, but there is no basis for charging those costs to AMC.

**CONCLUSION**

Class counsel seeks to convert a favorable but narrow ruling from the Ninth Circuit and a coupon settlement into an unprecedented fee award that is 14 times larger than the awards in comparable FACTA cases. The law prevents him from doing so. AMC respectfully requests that the Court either deny class counsel's percentage-based fee request without prejudice or, alternatively, award a lodestar-based fee in the range of $150,000 to $200,000.

Dated:  July 5, 2011

MANATT, PHELPS & PHILLIPS, LLP
ROBERT H. PLATT
JOSEPH E. LASKA

By: /s/ Robert H. Platt

Robert H. Platt
*Attorneys for Defendant*
AMERICAN MULTI-CINEMA, INC.